[Cite as *Weaver v. Weaver*, 2017-Ohio-4087.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jonathan Weaver, | : | |
| Plaintiff-Appellant, | : | No. 16AP-743 (C.P.C. No. 10DR-4220) |
| v. | : | (REGULAR CALENDAR) |
| April Weaver n.k.a. Walsh, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on June 1, 2017

**On brief:** *Joel R. Rovito*, for appellant.

**On brief:** *April Weaver*, pro se. **Argued:** *April Weaver.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Jonathan Weaver, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, refusing a downward deviation from the guideline child support obligation he must pay defendant-appellee, April Weaver n.k.a. Walsh. For the following reasons, we affirm.

I. Factual and Procedural Background

{¶ 2} Jonathan and April married in July 2007 and had two children. In November 2010, the parties' marriage was dissolved by an Agreed Judgment Entry – Decree of Dissolution. In connection with the dissolution, the court adopted the parties agreed shared parenting plan.

{¶ 3} In March 2014, the trial court approved and adopted the parties' first amended shared parenting plan. Pursuant to that parenting plan, Jonathan received

parenting time with the children on Mondays and Tuesdays after school (approximately 3:00 p.m.) until 7:15 p.m. and alternating weekends from Friday after school until Monday morning when he dropped the children off at school (approximately 8:00 a.m.). Jonathan's overnight parenting time was conditioned on him not being away from the children for longer than six hours, in which case April was given the right of first refusal to keep the children during that time. During summers, Jonathan had parenting time Tuesdays at 3:00 p.m. until Thursdays at 8:00 a.m. and alternating weekends from Friday at 3:00 p.m. until Monday at 12:00 p.m. The plan also detailed the parties' parenting time for other occasions such as holidays and spring break. There was also a general clause granting "both parties the right of first refusal to care for the children if the possession parent was to be away from the children for more than six hours during their parenting time." (Jan. 27, 2016 Mag. Decision at 3.) Regarding child support, the court ordered Jonathan to pay the guideline amount of child support, as calculated pursuant to the statutory child support schedule and applicable worksheet.

{¶ 4} In September 2014, April filed a motion to terminate the parenting plan in effect at that time, or in the alternative, to reallocate parental rights and responsibilities. April requested that the weekday schedule and their right of first refusal remain the same, but that Jonathan no longer have the children overnight on alternating Sundays. Jonathan requested that he not be required to pay child support. He also requested additional overnights with the children and that there be no right of first refusal in the shared parenting plan. The matter was heard before a magistrate in May and June 2015. After the trial, the magistrate denied Jonathan's request for additional overnights with the children. However, the magistrate limited April's right of first refusal to the portion of Jonathan's parenting time when he is working at the fire department. As to child support, the magistrate required Jonathan to continue to pay the guideline amount of child support. After the trial court filed an interim order adopting the magistrate's decision, Jonathan timely filed objections to the magistrate's decision. The objections challenged, among other things, the magistrate's parental time allocation and the magistrate's finding that Jonathan must continue to pay the guideline amount of child support.

{¶ 5} As to Jonathan's objection regarding parental time allocation, the trial court determined that the addition of one overnight on alternate Mondays would maintain

stability and consistency for the children's school schedule and, thus, ruled that Jonathan's parenting time would include alternate Fridays at 5:30 p.m. until drop off at school on Tuesday morning. The trial court also found that it is in the children's best interest for Jonathan to continue paying the guideline child support amount. Consequently, the trial court sustained in part Jonathan's objection to the magistrate's allocation of parenting time, and it otherwise overruled his objections to the magistrate's decision.

{¶ 6} Jonathan timely appeals.

## II. Assignment of Error

{¶ 7} Jonathan assigns the following error for our review:

> The trial court erred in failing to deviate downward in child support for Appellant.

## III. Discussion

{¶ 8} In his sole assignment of error, Jonathan asserts the trial court erred in rejecting his request to deviate downward in its child support award. This assignment of error lacks merit.

{¶ 9} Absent an abuse of discretion, a trial court's determination regarding child support obligations will not be disturbed on appeal. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997). An abuse of discretion connotes more than an error of law or judgment; it implies that the attitude of the trial court was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The trial court does not abuse its discretion where some competent, credible evidence supports the court's decision. *Ross v. Ross*, 64 Ohio St.2d 203, 208 (1980).

{¶ 10} When issuing an order of child support, the trial court must calculate the amount of support "in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code." R.C. 3119.02. The child support amount that results from the use of the basic child support schedule and applicable worksheet is presumed to be the correct amount of child support due. R.C. 3119.03. However, under R.C. 3119.22, a court may deviate from the guideline amount of child support if, after consideration of the factors set forth in R.C. 3119.23, the court determines that the guideline amount "would be unjust or

inappropriate and would not be in the best interest of the child." R.C. 3119.24(A)(2). As to matters involving shared parenting, R.C. 3119.24 permits a trial court to deviate from the guideline calculation if that amount "would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of extraordinary circumstances of the parents or because of any other factors or criteria as set forth in section R.C. 3119.23 of the Revised Code."

{¶ 11} For the purpose of R.C. 3119.24, "extraordinary circumstances of the parents" includes the following: "(1) The amount of time the children spend with each parent; (2) The ability of each parent to maintain adequate housing for the children; (3) Each parent's expenses, including child care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant; [and] (4) Any other circumstances the court considers relevant." The factors or criteria set forth in R.C. 3119.23 are as follows:

(A) Special and unusual needs of the children;

(B) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;

(C) Other court-ordered payments;

(D) Extended parenting time or extraordinary costs associated with parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order;

(E) The obligor obtaining additional employment after a child support order is issued in order to support a second family;

(F) The financial resources and the earning ability of the child;

(G) Disparity in income between parties or households;

(H) Benefits that either parent receives from remarriage or sharing living expenses with another person;

(I) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;

(J) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;

(K) The relative financial resources, other assets and resources, and needs of each parent;

(L) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;

(M) The physical and emotional condition and needs of the child;

(N) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;

(O) The responsibility of each parent for the support of others;

(P) Any other relevant factor.

In view of these provisions, it is clear that "there is no bright-line test to determine when a deviation is warranted." *Morosko v. Willis*, 9th Dist. No. 21333, 2003-Ohio-3360, ¶ 18.

{¶ 12} Here, Jonathan argues the trial court should have deviated from the guideline child support amount because he was awarded extended parenting time and because of the parties' similar incomes. In support, Jonathan cites cases in which courts have affirmed trial court decisions to deviate downward based on the amount of time the obligor spends with his or her children. For example, in *Ontko v. Ontko*, 6th Dist. No. E-03-050, 2004-Ohio-3805, ¶ 28, the court stated that "a trial court does not abuse its discretion by deviating from the guidelines when it calculates child support by equitably giving parents credit for the time they have physical custody of the child." However, in

this case, the trial court did not deviate from the presumptively correct child support amount.

{¶ 13} There is "no authority requiring a domestic court to deviate from the child support guidelines merely because a deviation would be permissible, or even desirable." *See Warzala v. Warzala*, 11th Dist. No. 2006-T-0018, 2007-Ohio-2855, ¶ 26. Consequently, a parent is not automatically entitled to a downward deviation even if extraordinary circumstances and factors listed under R.C. 3119.23 are present. *Bonvillian v. Clark*, 3d Dist. No. 10-13-20, 2014-Ohio-2003, ¶ 17; *see Pauly* at syllabus (in a shared parenting case, an obligor is not entitled to an "automatic credit in child support obligations under a shared parenting order."). Thus, we find that the trial court did not abuse its discretion by requiring Jonathon to continue to pay the guideline amount of child support even though he has extended parenting time with the children and the parties' incomes are comparable.

{¶ 14} Jonathan also argues the trial court did not adequately consider or analyze the pertinent information relating to the child support award. We disagree. The magistrate's decision detailed the factors and evidence pertinent to the determination of whether to grant a deviation from the guideline child support amount, and the trial court's interim order adopted the magistrate's decision in its entirety. In rejecting Jonathan's objection to the magistrate's decision regarding child support, the trial court indicated that it had reviewed the evidence presented at trial, including the testimony of the parties, and the magistrate's decision. Based on this review, the trial court found that it is in the children's best interest for Jonathan to continue to pay the guideline child support amount. Additionally, to the extent Jonathan contends that the trial court did not sufficiently explain its reasons for not deviating downward, this argument is unpersuasive because neither R.C. 3119.22 nor 3119.24 require the trial court to justify its decision not to order a deviation from the guideline child support amount. *Bonvillian* at ¶ 16; *McAninch v. McAninch*, 3d Dist. No. 14-02-10, 2002-Ohio-5580, ¶ 17.

{¶ 15} Because the trial court did not abuse its discretion in continuing to require Jonathan to pay the guideline amount of child support without a downward deviation, we overrule Jonathan's sole assignment of error.

## IV. Disposition

{¶ 16} Having overruled Jonathan's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

BROWN and HORTON, JJ., concur.

———————————————